Good morning. Donald Cook representing the three appellants. I want to start with what the jailors knew from the face of the warrants. Start with the Gant warrant. They knew that the warrant subject, Kevin Gant, 135 pounds. Their arrestee, Calvin Gant, 200 pounds. 65 pound difference and then of course there is that difference in the name. Most importantly, they knew from the face of the warrant, what the fingerprints were for the warrant subject. And they knew that the arrestee, Mr. Gant, my client, fingerprints did not match to the warrant subject. That, just from the face of the warrant, tells them their arrestee, their prisoner, is not the warrant subject. Counsel, can I just ask you one quick question? You're obviously well aware of Rivera v. County of Los Angeles. It obviously has significant impact and import on this case. True. You're also aware that that is the subject of en banc consideration by our court at this point. From your perspective, what would you have the court do with respect to this case while that en banc activity is proceeding? First, I would assume that Rivera is going to stand as the law. My experience is, re-hearing en banc petitions aren't granted very often. So that's my first starting point. So I'll take that as the law. And that's why I'm starting with what they knew from the face of the warrant. Because that was the key fact in Rivera. Just from looking at the warrant, name matched, date of birth matched, physical descriptors, you know, within an inch or two, 10 pounds. But doesn't that go to Torrance, the Torrance defendant? It goes... And they've settled. They're not here. Well, the rationale for holding Torrance liable is the same rationale for holding L.A. County. Because L.A. County knew everything that Torrance knew. Well, that's a question that I have, Counsel. Where in the record can we see that that is correct? Okay. Okay. Obviously, you have the warrant. The defense counsel for the county will confirm this. When Torrance booked Mr. Gant, books him into the county system, AGIS, it's the computer system they use. It has my client, Mr. Gant's, CII number. It's part of the process of booking into the county system that they must identify, an outside agency like Torrance must identify the arrestee, have a CII number for the arrestee. It's in the county system. So what's the strongest indication in the record that the county, that a problem was raised? Not with Torrance defendants, but as to the county defendants? When L.A. County had actual knowledge of my client, Mr. Gant's, CII number, and they received the prisoner, which they received with the paperwork, the warrant, they realized, wait a minute, you had, first of all, the mismatch on the weight, 65-pound difference. So what you're doing, I think, forgive me for interrupting, but your time is ticking away, and you're telling me how they could have known, and our case law is pretty clear, that there has to be, that there's a burden on the arrestee to raise an issue. Does the record say that Mr. Gant objected at that point? The record does not show that he objected, and I would disagree with the point you made about the case law. I think Rivera made it pretty clear that the arrestee's complaints are irrelevant. What is important is, what does the agency know from the face of official information? Because any arrestee can complain. Is it your position that at each step along the line, that each defendant has to independently confirm? That's stating it more strongly and broadly than I can state it based on the case law. What I would say, the rule is, is that when an officer receives, police receive a prisoner, as opposed to the subject of the warrant, that they're entitled to rely on what the other agency says, unless the official documentation that they have tells you, hey, it's the wrong person. Isn't that another way of saying they have to check the documentation and confirm? Sure. Absolutely. Have we ever said that? If you had a Gail Smith, warrant describes a Gail Smith, date of birth, African-American female, and the police give the jail a Gail Smith, same date of birth, but a very tall Caucasian male, I would submit that at that point, regardless of what the Gail Smith says, the jailer has done a duty to say, wait a minute, there's a problem here. So my question is just simple, and I think maybe you've answered it. I'm understanding you to say that each defendant does have the duty to independently verify the documentation. Well, by independently verify, I mean compare the paper with the person. Thank you. That's the duty. All right. And it occurs when you take custody. So, but as I say, from the face of the paperwork, you know he's not the person. Now, let's go to my client, Jose Alexander Ventura. Again, what does the warrant say? You have a six-foot-one suspect, 180 pounds. Who do you have? You have a five-foot-six, 320-pound male. Plus there's an additional fact that happens to show up on this warrant's face.  The reason you know that is the charge is, besides the 11351, probation violation, meaning felony conviction. So at that point, all you have to do, as District Judge Fees pointed out, run the name and birth date search. It takes a few seconds, and bingo, your arrestee, your prisoner, does not have any criminal record, period. So from the face of the paperwork, as well as looking at Mr. Ventura, you know that your subject is not the arrestee. I'm sorry, your subject is not the subject of the warrant. Reginald Leonard Smith. In that case, again, I go back to what L.A. sheriffs know when they take custody of Mr. Smith. Actually, when they're presumably talking to the Tennessee authorities about is he the subject of this warrant or not, Mr. Smith's claim got dismissed at the pleading stage, if you recall from the record. L.A. County knew the CII number for the subject of the warrant. The subject had been prosecuted in the Superior Court, convicted, been in the L.A. County jail. But not only does L.A. County not put that on the warrant, but none of this is communicated, apparently, to the Tennessee authorities. And as a result, my client, Mr. Smith, gets arrested, extradited from Tennessee to California on this felony warrant that L.A. County's own records show could not be his. Now, again, if they had bothered to have taken a few seconds to do a criminal history check on my client, they would have saw that Mr. Smith had never been charged with or convicted with this felony spousal abuse. So I would submit that in these cases, unlike in Mr. Rivera's case, from the face of the warrant plus what you could see with my client, wait a minute, there's a problem here. Number one, they don't appear to match. And number two, it's pretty darn easy to sort it out. It takes literally seconds. Now, in this case, we argued in a court below that there was a Fourth Amendment particularity violation. Judge Fee ruled against us. I read Rivera as foreclosing that argument to you, unless, of course, Rivera gets changed. Can I just interrupt? Sure. Forgive me, but is your particularity argument in Smith's case that there was a requirement that the CII information be added because it was readily available? Yes, and I'd add a little bit more to that, which is it's costless to do so. I mean, perhaps you're not familiar with it, but since 1988, there are no paper arrest warrants in L.A. County. It's all computer, right? It's all electronic. Systems are set up, you just punch in the key. I just want to be clear about the particularity argument in Smith's case versus Gantt's case, because Mr. Gantt had these prior exonerations. Mr. Smith did not. Correct. So you've answered my question, and I appreciate that. Correct. And I would submit that all the plaintiffs have a claim based on a failure to, in the case of Mr. Ventura and Mr. Smith, to more specifically describe the subjects under the Fourteenth Amendment due process using a Matthews versus Eldridge analysis, which is it costs nothing for them to have done so. They had the information. This is not like they had to go out and investigate in order to specifically describe their subject. They had the information. It's just that they don't do it. With regard to Mr. Gantt, the Matthews versus Eldridge analysis is, look, you've got to put into your system the fact of the prior exonerations. It costs nothing to do so. You have the knowledge. And, I mean, he was arrested like six prior times in the same warrant because he never bothered to put in exoneration information. In the Rivera case, there's a statement that L.A. shows that they have a policy that they do enter prior exonerations, but the court didn't reach that here. Is that in the record? It's – gee, I have so many of these cases, I'm just trying to sort it out. I don't think it's in the record here. It's the declaration of Ms. – not Becerra. I was turning to counsel for L.A. County. There's a declarant that knows about the CWS system. Her declaration is in the Rivera record. They claim in Rivera that they do enter prior exonerations. If you look at Mr. Gant's case, you know, six prior arrests, no exoneration information entered. I don't think that's an accident, right? I think one can reasonably infer that it's probably a practice that they don't enter the exoneration information. But, again – But that's outside the record right now. Yeah, that's – but it's not outside the record that Mr. Gant was arrested six times. But we don't have anything in this record to tell us that L.A. County has a policy of entering exonerations. Is that the answer to the question? Correct. And would you be clear on what exonerations we're talking about? Are you talking about exonerations that are noted in the record of the person – which individual? Well, Mr. Gant, that he went to court on the same warrant. I mean, yeah, we mean – which one are we talking about? I mean, are you saying if a judicial clearance you wanted when there's been a confusion with somebody else, you want the clearance in both files? What do you mean by both files? Well, when there's a confusion as to the identity, where should the judicial clearance form be filed? It will be reflected in CWS. That is the county – L.A. County Warrant System. And because that's what arresting agencies look to to determine if their detainee is the subject of the warrant. So let me just ask this question a little bit different way. We'll say Kelvin and Kevin, right? If I have a driver's license that says I'm Kevin and I'm stopped and I give my identification, the officer's going to look up presumably Kevin, right? Correct. But if the guy they're really looking for is Kelvin, it seems to me that the exoneration is going to be entered under Kelvin. Correct. I think that's Judge Thomas' question. Where do they enter it? Where do you want it entered? Do you enter it Kevin, Kelvin, or both, I guess is my question. If you run a check under Kevin, a DMV check, you only come up with Kevin's DMV information. If you run a criminal history check on the name Kevin, Gant, and the birthdate, you will first come up with a listing of two Gants, Kevin and Kelvin. And the two different CII numbers associated with those two tells the reader you're talking about two different individuals. And then you have to look at the criminal history and see the driver's license number and see that, oh, this pertains to the Kevin I stopped, the other pertains to the Kelvin. So is the answer to Judge Thomas' question that you think there ought to be a burden to enter the prior exoneration in both? No. Just into CWS. Because the way the systems work... But under which name, sir? It will be under, in our case, Kevin, the true subject of the warrant. And it will be in CWS. The information actually gets entered to that warrant, not so much to the person. So... You have about a minute left to enter, sir. All right. Very good. Good morning, Your Honors. May it please the Court. I'm Scott Caron. I'm appearing and arguing on behalf of the County of Los Angeles Defendants and Appellees. I do think that the Rivera opinion is instructive to this case, and I do want to spend a little bit of time discussing that opinion. I think it's not only instructive, but on at least three points, I think it's dispositive of the issues raised in this case. First of all, I think it's dispositive as to the state law claims. Rivera makes clear that state law immunity does apply to this type of claim, and that state law immunity will dispose of the state law claims. Secondly... Can I ask you, since we're talking about Rivera, I had to ask your opposing counsel whether, from his perspective, we should await the outcome of en banc activity, if any, in Rivera. What's the county's position? I don't think this Court necessarily needs to await the outcome of en banc review, if there is any in this case. So why not? Well, I think that there's the possibility of an en banc review of this case. And I suppose the Court could consolidate them and hear en banc review of both if it gives en banc review. That usually doesn't happen. Consolidation, yeah. I am aware of one... You just want us to live dangerously? Go ahead. No, I mean, it's a fair question. We could hold for Rivera, and I take counsel's point. We would have more information about whether or not there's en banc activity than you would at this point on Rivera. I will say... I guess the question is, can we resolve this on pre-Rivera law? I think you can. I think you can. But I do think that Rivera is instructive, and I think it's important to discuss Rivera. With respect to the claim that the plaintiffs make that the wrongful detention claims are governed by the Fourth Amendment rather than the Fourteenth Amendment, Rivera says otherwise. Rivera says that these claims are governed by the Fourteenth Amendment alone. I believe that Rivera is also dispositive of the Fourth Amendment particularity claims of all the plaintiffs. Under Rivera, the Fourth Amendment particularity clause does not require that a CII number... As a matter of law, a CII number, a numeric identifier, needs to be included on a warrant. And all of the warrants in this case included name, date of birth, address, and a detailed physical description. So I believe that Rivera is dispositive on that point as well. Going to the Fourteenth Amendment claims, I think the claim that's easiest to discuss and dispose of are the claims of Plaintiff Smith. Plaintiff Smith was the plaintiff who was arrested in Tennessee, extradited back to the county of L.A. The entire time that Smith was in the custody of the county of L.A., there was lawful authority to detain him. He was detained on the warrant. He was extradited on a felony warrant. And at the time that he was booked, he was booked on another misdemeanor warrant. And he admitted that that warrant was his. So there was lawful authority to detain him the entire time that he was in the custody of the county of L.A. And when that warrant went away, then he was detained pursuant to a court order, right? Correct, pursuant to a court remanding order. And again, I point to Rivera, which says that that is sufficient. What about Mr. Gantt? What about Mr. Gantt? I'm concerned that there seems to be at least a representation. I can't find it in the record here that L.A. County has a policy of inputting prior exonerations. I don't know if that's true or not. But if you think it's in the record, I'd be very interested to hear about that. But I'm going to assume that that's the case for the sake of this question because Rivera says so. And maybe that was litigated there. But what am I to make of the record here where Mr. Gantt was arrested mistakenly? I don't know. Record's little and clear five or six times. Right. And that's based on the allegations of the complaint. There is no evidence in the record in this case concerning the county's policy of entering exonerations and warrants only because those claims are disposed of at the pleading stage. They're disposed of on a motion to dismiss. So we never had the opportunity to present any evidence of that. Okay. So we don't have that in the record, and this person's been mistakenly arrested five or six times. Correct. That's the allegation and the complaint, yes. Right. Do you want to address that? Do you want to speak to that? Sure. Well, I think that with respect to his multiple arrests, you have to look at the warrant and whether the warrant was sufficient. And if the warrant satisfies particularity, if the warrant satisfies the particularity clause of the Fourth Amendment, I don't think there can be any liability based on the information. Let's talk about the Fourteenth Amendment. Let's talk about detaining him, continuing to detain him, please. Well, the claim in this case is that he was arrested in, I believe it was April 2008. Those other arrests, those prior arrests, he's not making a claim for damages as to those other prior arrests. He's only making a claim for damages as to the April 2008 arrests. And here are the facts. Yes, but the reasonableness of detaining him is surely informed by the fact that this was the fifth or sixth time. It might be if county of L.A. personnel knew that he had been arrested for the fifth or sixth time on that warrant. And there's no evidence, there's no allegation that county of L.A. personnel knew that information. Okay. So that really kind of begs the question, because opposing counsel's point is if that had been entered, then county of L.A. would have known that. And we have Farley, right, that talks about if there's readily available information that can easily be entered to avoid this risk or reduce this risk, why shouldn't that be appropriate? If we get to a due process analysis, why shouldn't that be an appropriate requirement? Well, I think when you look at Gant's claims, you have to look at what the county of L.A. knew, what information was available to the county of L.A. at the time he was in their custody. Keep in mind, he was only in their custody about eight hours. He was only while he was in court. Which brings me to a different question. As to setting aside the Torrance defendants, is there anything in the record that indicates that Mr. Gant said to them, you've got the wrong guy, it's my brother? No. In fact, he testified at his deposition that he doesn't even remember being in county of L.A. custody. He testified. He was having trouble keeping his prior mistaken arrest straight. That's what the claim is. It gets to be tough when it gets to be five or six times, I imagine. But there is no evidence. But anyway, nothing in the record indicates that he raised his hand and said, you've got the wrong guy. Is that right? There's no evidence that he complains to Sheriff's Department personnel that he was the wrong person. And I would disagree with counsel's statement that under Rivera, complaints are irrelevant. Rivera does say that unsupported claims by themselves do not trigger a duty to investigate. But Rivera also says that there may be a duty to investigate if the circumstances indicate that further investigation is warranted. And I think whether or not a detainee complains to law enforcement should be considered part of those circumstances. I will also say that I'm not aware of any case, and I've litigated a number of these cases with Mr. Crook as plaintiff's counsel. And I've done a lot of research in this area of the law. I'm not aware of any case imposing a duty on law enforcement, on the detaining agency, to sua sponte, investigate a detainee's identity where that detainee doesn't say anything, doesn't make a statement. Right. I'm not. Unless there are objectively reasonable factors that would indicate that further investigation is warranted. True. If there are other strong indications. Well, objectively reasonable, I think. I mean, for example, the weight difference, height difference, difference in race, those would be objectively reasonable, objective manifestations that would trigger a duty to further investigate. Wouldn't you agree? Under Rivera, Rivera says that there may be a duty to investigate if there are, in the Rivera court's statement, significant differences between the arrestee and the warrant. Significant differences. So, you know, if the name doesn't match, the gender doesn't match, race doesn't  What about the weight? Weight can fluctuate. So I don't think weight by itself should be a dispositive. What about the height? What about being seven inches off in height? That shouldn't fluctuate. Well, it shouldn't fluctuate. But there are cases holding that differences in height or weight may not matter. Brady v. Dill, a First Circuit case. The cases that I've looked at along those lines, though, are talking about an inch or two. This was a big difference, if we're talking about Mr. Ventura. Talking about Mr. Ventura, yes. Right. So I don't know of a case where there is an independent duty for each successive defendant to separately verify, which is why I asked opposing counsel that question. But what about Judge Thomas's question, if it's a discrepancy that at a glance would be readily apparent? I would submit that it would be burdensome on law enforcement to sui sponte to investigate the identity of every arrestee, especially the County of Los Angeles. We submitted evidence in this case that over a 13-year period, there were 2 million detainees in the L.A. County Jail, and a number of them would have been detained on warrants. That if there is a single discrepancy. I think that was the question. I think the question was if they're objectively, yeah. And your answer is, even if there are objectively reasonable visual clues, that you have the wrong person, you have no duty to investigate? I think it depends on the circumstances. I think if it's just a height difference, I would submit that it would be burdensome on the County of Los Angeles. If there's a single discrepancy of information between the warrant subject and between the warrant and the suspect in custody, it would be burdensome to investigate each and every time that there is a single difference. If there are multiple differences, a different name, Fairley v. Lamont is a good example. There was a difference in name, first name, a difference in weight. The plaintiff matched the last name and the date of birth, but law enforcement also knew, they had independent knowledge, that the warrant subject had a twin brother. So that essentially rendered the last name and date of birth matches moot. Right? So that's a situation like that where there's a significant reason to believe that he's not the warrant subject. I don't think that there should be a duty imposed. But, you know, when you say it's burdensome, I'm not sure that's a constitutional defense. It's a practical defense, and certainly an important practical consideration. But when you say it's too burdensome for us to research your identity when it's obvious you have different characteristics than the identity indicated on the warrant, that strikes me as quite troubling. In Rivera, this Court talked about burden as being a factor in the 14th Amendment analysis, whether or not the 14th Amendment imposes such a duty. Counsel, I think that really brings me back to – it did. Rivera does have that discussion, and I appreciate that. But what about pre-Rivera? Pre-Rivera, we had Baker, we had Lee talking about the fact that I think quite clearly that at some point an erroneous deprivation can give rise to – will ripen into a constitutional violation, a 14th Amendment violation. So pre-Rivera, can this be defended? Yes, under Baker v. McCollum. As Your Honor just pointed out, under Baker v. McCollum, there's only a – the 14th Amendment in the context of a mistaken arrest or wrongful detention case based on mistaken identity. The 14th Amendment only requires compliance with those procedures required by the Bill of Rights, specifically the Fourth Amendment right against being arrested without probable cause and the Sixth Amendment right to a speedy trial. As long as those procedures are complied with, there's no duty to investigate any further. And with respect to – Ever. No, no, the jailer is never going to have a duty under Baker or Lee. That's your position? If those – if the Fourth Amendment and Sixth Amendment are complied with, that is what Baker holds. That is what Baker holds. Remember in Baker, the Potter County Sheriff's Department had the fingerprints of the true warrant subject, which could have been compared to the plaintiff's. They had a booking – they had a photograph of the true warrant subject, which could have been compared to the true warrant – to the plaintiff's. And the plaintiff raised the argument, well, why didn't you just compare my fingerprints? You had them. Why didn't you just look at the photograph? You had it. And the Supreme Court said they didn't have to. Prior to Rivera, have we ever made a distinction between a jailer – now, forget the arresting officer for a minute. But have we ever made the distinction between a jailer holding a prisoner pursuant to a warrant versus a court order? I'm talking about the distinction that occurred, for example, in Mr. Smith's case where – Yeah. In the context – you mean in the context of someone being arrested on a warrant? No. No. There is – I'm talking about being held after a Fourteenth Amendment claim. In other words, have we ever discussed the distinction between holding somebody in a Fourteenth Amendment context, holding them pursuant to the original warrant versus holding them after a court appearance where a judge indicates that the individual should be held over? Not that I'm aware of. Not in this circuit. Not in this circuit. The Seventh Circuit has addressed that in Hernandez v. Sheehan, which is cited in our brief. Thank you. I have about two and a half minutes. I promised counsel that I would reserve some time. Thank you. Unless the Court has any further questions. No. Thank you. Thank you. Thank you.     Thank you. Thank you. Thank you. Thank you. Good morning, Your Honors. Jules Zeman on behalf of the City of Chino and the Chino Police Department defendants. I just have a couple of points to make, and of course I'll be happy to address any questions that the Court members may have. First, as we indicated in our paperwork with respect to the allegations against our clients, the individual officers were not sued in this case, and there was no evidence in the record whatsoever, in our view, that there was any kind of policy that could contribute to a Monel liability on behalf of my clients. Secondly... So what the judge, I think, said about that is this boils down to what happens. Is deliberate indifference demonstrated when an arrest pursuant to a policy? I think Chino's position was that this arrest was pursuant to its policy. What happens when that policy permits the arrest of somebody who's seven inches too short? Well, I think there was nothing in that policy. I understand the admission and the assertion that there was admission against interest. Plaintiffs have not, or the plaintiff Ventura has not specified any specific item in the policy. I think the policy argument that counsel makes is that just the assertion of a policy and the admission that the arrest was made pursuant to a policy, therefore has a pregnant group of characteristics in the policy that makes liability for Monel possible. We would disagree with that position. There's nothing in the policy that's even been articulated that is wrongful, that is on its face, violative of the Constitution. I think that the assertion that the admission that the policy was followed in this arrest contains elements that therefore facially make the policy unconstitutional is far too broad and unsupported by the record. What are we to do with this discrepancy, though? My understanding is the record that Chino says we arrested this individual pursuant to our policy, and then just as the district court judge was concerned, he was 7 inches too short. Right. I think the record does reflect that the officer in his declaration indicated that he thought that the discrepancy was much smaller than 7 inches, and there was an admission by the plaintiff himself that, in fact, he had indicated to the officers that he was 5'11", and not 5'6", or 5'7". I think we have a situation here where the officers have made a mistake. Well, I've listened to the tape of the arrest, so could you address this, please, in the Bain Act context and whether or not there was coercion? Yes. I don't believe that there was coercion. I think the Bender case is fairly strong on that. The facts of Bender were very egregious, and I think the court in Bender focused very clearly, and the court in Scheuer, you've got to have something outside of the arrest itself. Here, I don't think you had a threat. I think we have deposition testimony of the plaintiff himself. He said he didn't feel threatened. He didn't feel coerced. He didn't feel intimidated. Was there an interpreter used at the deposition? You know, I believe that there was. The answer is yes. Yes. Thank you. I have another question about this, and time is ticking away, if I might. Yes. Did Chino raise exhaustion as to the state claims? I do believe that they did. I couldn't find it in the record. If you haven't found it in the record, then the answer would be they did not. Okay. And I'll defer to my attorney, unless there's other questions. No, thank you. I didn't see it raised anywhere. Okay. Thank you. Mr. Thibault, we'll put two minutes on the clock. Two minutes. Yeah, and then we'll equalize it with Mr. Cook. Good morning, Your Honor. It's James Thibault for defendant county of San Bernardino. The claim in the district court against my client was that we did not compare the criminal history with the plaintiff. We'd simply point out. You're speaking of Ventura, Mr. Ventura. Is that correct? Yes, correct, Your Honor. We're, in this case, only on the plaintiff Ventura. Thank you. However, we did have testimony from a DOJ expert on the state database, CLETS, which contains the criminal histories. The point is made by the, by plaintiff Ventura that if we had checked that database, we would have seen that plaintiff Ventura had not been convicted of a felony. And, of course, his point being that the warrant itself showed he was on probation for a felony. However, the, as it turns out, all the database showed was the plaintiff's name, date of birth, same date of birth and name as appeared on the warrant, and did not show any information as to the true warrant's suspect. So, the assumption that the criminal history is going to be a valid basis for comparison is simply faulty, and turned out to be so in this case. Counsel, the district court found that Mr. Ventura didn't meet his burden of showing that he objected when he was in the custody of the county. What's the evidence that he objected when he was in the custody of San Bernardino? He did, he did testify that he informed... Is it the woman at the booking, that he spoke in Spanish to the woman? Correct. Is that it? Yes. So, I couldn't tell whether that person was in the county or in San Bernardino. It's your understanding that was in the county, or in the San Bernardino? Correct, in the county of San Bernardino jail facility, West Valley Detention Center. Is there any other evidence one way or another about that? Other than San Bernardino saying there's nothing in the file, that no one wrote it down. Correct. I saw that. Okay. The evidence was that our procedure would be to document such a complaint. There was no such documentation in the booking jacket of Mr. Ventura. Thank you. Any further questions? Thank you for your argument. And we'll put three minutes on, Mr. Cook, for your reading. I want to apologize to Judge Smith. I misunderstood his question. I do believe the court should withhold its decision until after the rehearing petition is determined on Rivera. Because there are aspects of that case that does affect this case. My position is, if Rivera stays as the law, claims could still prevail, albeit on different grounds. The argument you just heard about running Mr. Ventura's name and birth date would not have revealed criminal history. Well, that's just a misstatement of the record. As Judge Fease correctly points out on his April 26, 2011 order, it's at page 25, volume one of the excerpts. If you run, put in the name and birth date. Remember, that takes seconds. You get Mr. Ventura's identity. You push a button. You see his criminal history. And it has that he applied to be a foster parent. Period. That's it. Counsel, let me be sure I understand your position. I mean, it's very clear what your position is with respect to huge differences in height and weight and so on. But my understanding is what you're saying is that there is an affirmative obligation on the part of all these law enforcement agencies when someone comes into custody to basically conduct their own investigation to determine whether the particularities of the warrant that allows them to be held are accurate. That's obviously a gross overstatement. But is that, in essence, what you're saying? No, it's not. In fact, reading the Rivera decision, I read Judge O'Scanlan as saying, number one, merely because a prisoner complains really doesn't accord much in terms of any weight. Number two, what's important is what does the official information tell the custodial agency? If that official information puts them on notice there's something wrong and we know from the agency's standpoint. Well, I get that. I'm going one step beyond because that's where I think you're going. And that is that whether there's a complaint or not, that when someone comes into custody, that there's an obligation on the part of the law enforcement agency to, in effect, conduct a mini-investigation to determine whether by observing the warrant and anything backing it up, that the person they have in front of them, if you will, is the same person. Is that your position? No. My position is they have to read the paperwork. If the paperwork appears to match the person, that's it.  For example, you referred to earlier an obligation that they would check this database or they'd check that database. Now, that's not right there. It's just something to go to. Sure. Take Mr. Ventura. You have the paperwork, the warrant. You have Mr. Ventura. There's a problem. At that point, after reading the warrant. Because of the height difference, for example. Height, weight. And also, another component of this is, do they know what to do? This is something else that Judge O'Scanlan pointed out. Would you know where to check? From the face of the Ventura warrant, you know what to do. Punch in the numbers. Look at his criminal history. He's got no warrant. So my position is you have to read the paperwork. You have to look at your person. If it appears to match, you're okay. Next prisoner. In this case. Based upon the face. I know there's not a paper document. But whatever the computer shows in one area, I don't know whether Chino and San Bernardino have a paper or electronic. But whatever is there on the face of it, that's all you have to do. Correct. So Ventura's your strongest case. How about Gantt? Okay. Well, Gantt, same problem except you know CII numbers. It's even more obvious, which is that paperwork tells you the warrant subject's fingerprints. Your paperwork on Mr. Gantt, which you have because it's right there in the same computer system that everybody uses, says different CII number. That tells the police, anyone who knows these numbers, two different people. I mean, I can't stress enough how important CII numbers are. And there's been a record of this case. I mean, Angela Becerra, the county representative, testified that if I got mismatched on names and birth dates but I've got the same CII number, then I've got, in my opinion, the same correct person, notwithstanding the mismatch. CII numbers are the gold standard. It doesn't mean that they are never wrong. Of course, it's a human process. Something can go wrong. But when it comes to relying on CII numbers versus name, birth date, et cetera, you go with the CII number. If you see that they don't match, boy, at that point you've got to do something. And, again, if you know the systems, the obvious thing to do is punch it in. And you know the results right then and there. Our questions have taken you over your time. Any further questions? Okay. Thank you, Mr. Cook. Thank you. Thank you. All for your arguments. The case will be submitted for decision.
judges: Thomas, Smith, Christen